Whaley, Judge,
dissenting:
The evidence in this case is clear that the defendant did not delay the contractor a single day. The delay was caused solely by the lack of proper and adequate equipment to perform the work as called for under the terms of the contract. For only 4 months out of 21 months did the dredge remove the material required to be removed in any one month. The easy part of the work had been performed, yet during this period the equipment failed to keep up with the required amount of material to be removed as stated in the contract. The contractor had gotten behind in the work some two hundred and twenty odd days when the last section of the work was reached. At this point it was found that the dumping ground at Allendale which the defendant had agreed to furnish was not available. Using the dumping ground across the river which was available would necessitate extra expense on the part of the contractor. Knowing he was far behind in the work and that heavy liquidated damages had been incurred and the work remaining to be performed was difficult and expensive, the contractor requested additional compensation for the remaining yardage to be removed. When this request was under consideration, the contractor and the defendant in a conference agreed to a new contract to take the place of the original contract. This new contract provided that the Government should assess the liquidated damages and be released from the contract. The contractor was to receive payment for work performed, to have the retained percentages returned, and reserved the right to sue for the *348 remission of tlie amount deducted as liquidated damages— not on the legal ground that the contract had been canceled by the defendant before completion, but because the contractor was not responsible for the delays in performance. There was no election by the defendant under the terms of the original contract between allowing the contractor to continue the work to completion, assessing liquidated damages for any delays for which the contractor might be responsible, and the cancellation of the contract and holding the contractor for the cost of completion and damages suffered.
The second contract was a mutual agreement between the Government and the contractor, with considerations on each side beneficial to each party. The Government was relieved of furnishing a dumping ground and the plaintiff of a losing contract, the daily performance of which was causing the contractor heavy additional loss. There was no cancellation of the original contract by the defendant under the terms thereof, nor was there a breach by either party. It was the joint action of both parties that canceled the first contract motivated by mutual benefits.
There is no similarity between this case and the cases of Fidelity & Casualty Co. v. United States, 81 C. Cls. 495; Commercial Casualty Insurance Co. v. United States, 83 C. Cls. 367; and Hampton, Executor of Young, v. United States, 82 C. Cls. 162. In all these cases the defendant elected to cancel the contract and it was held that where the defendant made this choice liquidated damages could not be collected. In these cases the defendant chose to complete the work and charge the cost to the contractor. No such action was taken in this case. The defendant made no choice. It was a mutual cancellation under the terms of a new agreement which provided for the collection of liquidated damages and the retention of the right of the contractor to sue for the remission. That simply meant he had retained the right to. show in a judicial tribunal the delays were not caused by his failure of performance. After the execution of the second contract a claim was made to the Chief of Engineers for the remission of liquidated damages and the claim was denied. The facts show beyond dispute every day of delay was *349 caused by the contractor and there was no possibility of catching up with these delays in performance of the remainder of the contract. On the contrary, if past performance was any indication of what future performance would be, much heavier liquidated damages would be incurred. The contractor knew the remaining section was difficult and expensive work. Both sides were aware of this fact. The number of days for which the defendant is liable can be ascertained with precision and definiteness from the facts found.
It must be borne in mind we are called upon to construe the second contract, not the first contract. In the second contract it is agreed that the contractor reserved the right to sue for the “remission” of liquidated damages. The use of the word remission carries with it an acknowledgment that the penalty has been legally imposed. The dictionary gives the meaning of this word as a “Relinquishment of a claim, right, debt, etc.” The right to sue for the relinquishment of this debt clearly means the contractor could show that the delays were not caused by any act of his and therefore all or part of the penalty should be abated. Underno reasonable construction could the use of that word mean that the contractor could avail himself of the terms of the original contract and rely upon the fact that because the original contract had been mutually terminated therefore the defendant had deprived itself of part of the consideration which entered into the execution of the second contract. The second contract states that the original contract is “modified in the following particular but in no others.” Both parties had to agree to the change. There is excluded by these words the right of the defendant to exercise an election to cancel which was granted in the first contract. The modification of the first contract was not unilateral but bilateral. Both parties agreed to the termination of the first contract on the terms stated in the second contract and one of those terms was “provided further that this supplemental agreement will not prejudice in any way the contractor’s right, if any, for the remission of liquidated damages.” Certainly 'these words cannot be construed to allow the contractor to *350 claim a cancellation of the original contract by the voluntary action of the defendant whereby it was deprived of a right under the first contract.
In my opinion the motion for a new trial should be overruled.